HANSON, Executrix, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*February 6—June 17, 1914.*

*Railroads: Death of employee: Interstate commerce: Waiver of objection that federal statute governs: Negligence: Flying switch: Violation of rule: Questions for jury: Appeal: Harmless error: Evidence: Admissions: Opening statement of counsel.*

1. In an action for the death of a railway employee, the objection that the decedent was employed in interstate commerce and hence that the case is governed by the federal statute is waived if not raised before or during the trial.

2. Any movement of a train in switching whereby, while the train is in motion, a part of it is cut off, increased speed given to the engine, the detached cars also kept in motion and following the engine at a less speed and allowed to run on to a switch track, has been understood to be a flying switch; and in this case there was sufficient evidence to sustain a finding that the movement of the train during which plaintiff's intestate was killed, though sometimes called a drop switch, was a flying switch

within the meaning of a rule of the defendant company by which flying switches were forbidden except at spur sidings.

3. The fact that a flying switch was made in violation of a rule forbidding it is sufficient to support a finding of negligence on the part of the conductor or engineer who was responsible for its being made.

4. The question whether the negligence of a railway company or its agents contributed in a greater degree to produce an injury than the negligence of the injured employee, is peculiarly a jury question.

5. Whether a statement by plaintiff's counsel, in opening the case, of one of the facts which they intended to prove, should be received in evidence, when offered by defendant, as an admission of that fact on the part of the plaintiff, is not decided. Its exclusion in this case was not prejudicial error, since it was made a part of the record and defendant's counsel was allowed to comment on it in his argument to the jury.

APPEAL from a judgment of the circuit court for Ozaukee county: MARTIN L. LUECK, Circuit Judge. *Affirmed.*

This is an action to recover damages for the death of the plaintiff's testator, Christ Hanson, who was a bridge foreman in charge of all bridge repairs on the Superior division of the defendant railway, which division extends from Northern Michigan to Milwaukee. The facts were substantially undisputed, and were as follows:

On August 4, 1911, the conductor in charge of a freight train on the Superior division received orders to pick up Hanson and his crew at Hilbert Junction and to distribute bridge material as designated by him between Hilbert Junction and North Milwaukee. Hanson would inform the conductor in advance at what points the material was to be unloaded and the train crew would attend to the stopping and placing of the cars, which were all flat cars. Through a mistake on the part of Hanson some material which should have been unloaded north of Hayton had been carried past, and Hanson was desirous of having the car containing that material sent back without rebilling it. At a station called Fredonia, not far from Cedarburg, Hanson again told the con-

ductor he wished the car could go back without reporting it, and the conductor agreed that Cedarburg was the most convenient place to drop the car in, from where it could be returned the next morning to Hayton without rebilling or reporting it. The car containing the material which was to be returned the next morning was the fourth car from the rear, counting the caboose. When the train came into Cedarburg it came to a full stop and the last two cars and the caboose were uncoupled from the rest of the train. The forward part of the train then pulled ahead for a short distance and stopped, with the rear car, the one to be thrown in on the switch, containing the bridge material, some distance from the switch leading in on the sidetrack. The brakeman then cut the air from this car, the train pulled ahead, and on a proper signal slacked so that the pin could be pulled, which was done, the balance of the train pulled away past the switch which was then thrown, and the rear car—containing the bridge material—ran in on the sidetrack; the rear of the train, consisting of the caboose and two cars, remaining stationary on the track. Before reaching Cedarburg, Hanson with his men had been riding on the sixth car from the rear, but before the switching operation commenced he left this car, walked back to the rear of the car just ahead of the car to be dropped, and sat or kneeled on the extreme north end thereof. The switchman who was riding on the south brakebeam of the fourth car (i. e. the car which was to be dropped) testifies that Hanson was on the north end of the fifth car within a few feet of him, kneeling down at the end of the car apparently ready to pull the pin on that car, and he (the brakeman) said to him (Hanson), just before the engine slacked, "Never mind, I have got it," and pulled the pin on the fourth car as the engine slacked and swung himself up on to the front end of that car. When the pin was pulled and the signal given, the engine started ahead quickly, and when the forward part of the train had reached a distance of four

or more car lengths from car number 4, the brakeman saw deceased on his hands and knees in the middle of the track under the front end of car number 4, where he was killed. The pin on car number 5 was not pulled.

The jury returned a special verdict as follows:

"(1) Was Christ Hanson, at or immediately preceding the time he was injured, engaged in assisting or attempting to assist in uncoupling the car that was to be switched on to the sidetrack? A. No.

"(2) Was there a want of ordinary care on the part of defendant's employees in operating the train at the time of the injury which proximately contributed to the injury and death of Christ Hanson? A. Yes.

"(3) Was there a want of ordinary care on the part of Christ Hanson which proximately contributed to his injury and death? A. Yes.

"(4) If you answer both the second and third questions 'Yes,' then answer this question: Was the want of ordinary care of the servants of the defendant greater than the want of ordinary care of Christ Hanson? A. Yes.

"(5) If you answer both the second and third questions 'Yes,' then answer this question: Did the want of ordinary care on the part of the servants of the defendant contribute in a greater degree to produce the injury and death of said Christ Hanson than the want of ordinary care of said Christ Hanson? A. Yes.

"(6) If the court shall be of the opinion that the plaintiff is entitled to recover, at what sum do you assess plaintiff's damages? A. Four thousand and five hundred dollars ($4,500)."

Judgment for the plaintiff being entered on this verdict, the defendant appeals.

For the appellant there were briefs by *C. H. Van Alstine* and *H. J. Killilea,* and oral argument by *Mr. Killilea.*

For the respondent there were briefs by *Julius P. Frank* and *William F. Schanen,* attorneys, and *James D. Shaw,* of counsel, and oral argument by *Mr. Shaw.*

The following opinion was filed March 17, 1914:

WINSLOW, C. J.   Upon the argument in this court the objection was for the first time made that the case was one within the federal act, *i. e.* that the death of the testator occurred while he was employed in interstate commerce, and hence that the trial of the case under the provisions of the state law was a mistrial, and the judgment must in any event be reversed.   This is the identical question raised and disposed of in the case of *Leora v. M., St. P. & S. S. M. R. Co.* 156 Wis. 386, 146 N. W. 520.   Under the principles stated in that case it must be held here that the objection has been waived by reason of the fact that it was not raised in the trial court.   We do not, therefore, consider the question whether the death of the testator occurred while he was employed in interstate commerce or not.

The appellant's chief contention on the merits is that there was no proof of negligence on the part of the defendant or its agents who were operating the train.   We find this claim untenable.   A rule of the company is as follows: "Flying switches are forbidden except at spur sidings."   It is true that there was evidence from a number of witnesses that the movement made in the present case, though formerly called a flying switch, was no longer called a flying switch but a drop switch.   There was, on the other hand, competent and credible evidence from at least one expert witness that the movement made in this case was in fact a flying switch.   Examination of adjudicated cases will show that any movement of the train in switching whereby, when the train is in motion, a part of it is cut off, increased speed given to the engine, the detached cars also kept in motion and following the engine at a less speed and allowed to run on to a switch track, has been understood to be a flying switch.   *Magner v. Truesdale,* 53 Minn. 436, 55 N. W. 607; 3 Words & Phrases, 2853.

There is indeed a more complicated flying switch movement which occurs when there is a second detached part of the train kept in still slower motion following the cars to be switched, and this is said by the defendant's witnesses to be the only train movement which is now called a flying switch. However, there was sufficient evidence to sustain a finding that the train movement in the present instance was a flying switch within the meaning of the rule. If it was, then it was a prohibited movement, and the fact that it was made amply supports a finding of negligence on the part of the conductor or engineer, who was responsible for its being made. That there was ample room to find that this negligent movement of the train proximately contributed to the death of Hanson cannot be questioned.

The jury found, in substance, that the deceased was guilty of contributory negligence, but that the negligence of the defendant's agents was greater and contributed in a greater degree to produce the accident than the negligence of Hanson. The question as to whose negligence contributed in greater degree to produce the injury is peculiarly a jury question, and we cannot say that the finding of the jury thereon is against the evidence.

There is but one further contention which requires notice. It appears that in opening the case to the jury plaintiff's counsel stated, as one of the facts which they intended to prove, that Hanson was sitting down on the rear of the fifth car and when the train slacked up pulled the pin, and that the train was then jerked forward violently and he fell to the ground. When the evidence came in on the trial, the brakeman Lake, who in fact pulled the pin on car number 4, testified that he saw the deceased apparently reaching to pull the pin on car number 5, but that it was not in fact pulled. Another witness who was peeling ties just east of the track and about 100 feet south of the place of the accident, testified that he saw deceased sitting on the rear end of car number 5 with

his back to the engine, his feet hanging down, and his left hand holding the brakestaff, when the jerk came and he fell off.

After this testimony came in plaintiff's counsel adopted the theory that deceased did not try to pull the pin, and defendant's counsel became anxious, on the other hand, to convince the jury that at the time of the accident the deceased was attempting to pull the pin, thus making himself a volunteer. Just as the evidence closed the defendant offered the opening statement aforesaid in evidence as an admission on the part of the plaintiff. Plaintiff's counsel said he had no objection to its appearing on the record that he made that statement to the jury, and the court ordered that the record should show that the statement was made just as claimed, but that the objection to it as evidence was sustained. It further appears that in his argument to the jury defendant's counsel commented on the statement so made a part of the record.

It is impossible to see how the defendant has suffered any prejudice even if it were to be conceded that the statement should have been formally received in evidence, a matter not necessary to be decided. Plaintiff's counsel frankly admitted that he made the statement, and defendant had the benefit of that admission just as fully as he would have had it had the statement been ordered to be received in evidence.

We find no prejudicial error in the record.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on June 17, 1914.