GRABER, Respondent, vs. DULUTH, SOUTH SHORE & ATLANTIC
RAILWAY COMPANY, Appellant.

*December 11, 1914—January 12, 1915.*

*Railroads: Injury to brakeman: Interstate service: When federal stat-
ute governs: Election: Waiver: Questions for jury: Assumption
of risk: Excessive damages: Appeal: Harmless errors: Discre-
tionary reversal.*

1. Where the facts are undisputed the question whether a particular·
   service or engagement therein is of interstate character is one
   of law; but when material facts bearing on that question are in
   dispute they may properly be determined by the jury, leaving to·
   the court the legal conclusion to be drawn therefrom.
2. A railway employee, while actually performing a service essential
   to or so closely connected with the business of interstate com--
   merce as to be substantially a part of it, though not necessarily·
   exclusive of all *intrastate* features, is employed in interstate
   commerce within the meaning of the federal Employers' Liabil-
   ity Act.
3. If the particular service in progress at the time of the injury, in
   any substantial part, is within the interstate field, then the fed-
   eral law rules the case if either party so elects; but this is a·
   right which may be waived, expressly or impliedly.
4. Any brief incidental absence from the scene of work or the instru-
   mentality used therein, which is not inconsistent with the em--
   ployee's duty to his employer, such as customarily visiting a
   wayside place for lunch or other common means of refreshment,
   or waiting after one task is done for orders as to the next move-
   ment, does not preclude the employee from claiming to be still
   on duty and engaged in interstate commerce.
5. Where upon the evidence the trial court might properly have
   found, as matter of law, that plaintiff was engaged in interstate
   business when injured, its submission of the question to the jury
   is not an error of which defendant can complain.
6. Where, in an action for injuries to a railway employee, neither
   party claimed the benefit of the federal Employers' Liability Act,
   there was no error in refusing to compel plaintiff to elect whether
   he would claim under the federal or the state law; and where
   the court applied the federal law, which was more beneficial to
   the defendant than the state law, the defendant has no ground
   for complaint.
7. The defense of assumption of risk, available under the federal
   Employers' Liability Act, applies only to such risks as the em-

ployee expressly or impliedly contracts to take upon himself because of being ordinary incidents of the business as customarily carried on, or as carried on in the particular case to his knowledge or under such circumstances that reasonable attention to his situation would afford him such knowledge. It does not include the risk of unexpected negligent acts of co-employees.

8. An award of $10,000 for injuries to a brakeman's foot, necessitating amputation of the leg between the ankle and the knee, is *held* not so large that this court should reverse the judgment, under sec. 2405*m*, Stats. 1913, on the ground that justice had miscarried, where, although the proper motion was made in the trial court, the question was not argued upon the appeal.

APPEAL from a judgment of the circuit court for Douglas county: W. J. TURNER, Judge. *Affirmed.*

Action to recover for a personal injury.

Defendant was engaged in interstate and intrastate commerce of railroad transportation character. Plaintiff was in its employ, his business, in the main, being that of a brakeman between Soo Junction and Marquette in the state of Michigan. Soo Junction was a terminal transfer point where cars were brought from within and without the state and placed in or made up into trains for completion of transit. That service was essential to the interstate as well as the intrastate feature of defendant's business. February 24, 1912, in the early part of the evening, plaintiff with his train crew completed the trip for the day from Soo Junction to Marquette and return. On such return, several interstate cars were brought in. The remaining duty for the day was to sidetrack, the cars, put away the engine in the roundhouse, locate and properly close the caboose, and do work in the yard, if time should permit, and such were the orders from the conductor. After his train work was done, pursuant to duty, he set the brakes on some cars on the sidetrack so they would not be unduly disturbed by the movement of the through train which was about to exercise the necessary movements to take in some cars and prepare to proceed upon its course. It was an interstate train. After doing such work, plaintiff pro-

ceeded to a near-by saloon, off the right of way, to get a drink. The saloon was so located that the through train, for a considerable distance up and down the track, obstructed the way therefrom to the depot. It was a cold day and plaintiff had been out so long that he felt in need of refreshments. When he had last seen his conductor, of whom it was his duty to inquire as to further orders before going to supper, he was at the depot. After getting the drink plaintiff started for the depot, for the purpose of obtaining final instruction and then going to supper at a place on the right of way, on the depot side of the standing train. Such train had completed the required switching, taken in several cars, and the engine was about to be spotted at the water tank to take in a supply of water and be in readiness to depart. As plaintiff reached the train and was in the act of climbing through between two gondola cars, without any signal being given, it was suddenly started, whereby his right foot was caught and so crushed that amputation of the leg between the ankle and knee, was necessary.

Upon proof of the foregoing, the particulars of the occurrence, the nature of the injury, its effect, evidence tending to prove that trains often stood as in the particular case, and as often as half an hour to an hour and a half, leaving no way of getting from the side of the track where plaintiff was before endeavoring to pass through between the cars, other than by executing some such movement as he attempted or go around the end of the train, and that trainmen commonly took the short cut and depended for warning of danger upon a signal by ringing of the engine bell which commonly occurred before moving a train,—the cause was submitted to the jury, resulting in a verdict of $10,000 for plaintiff upon which judgment was rendered.

For the appellant there was a brief by *Thomas S. Wood* and *Wm. R. Foley,* and oral argument by *Mr. Wood.* They contended, *inter alia,* that plaintiff was not engaged in interstate commerce nor within the scope of his employment.

*Ill. Cent. R. Co. v. Behrens,* 233 U. S. 473, 34 Sup. Ct. 646;
*Pedersen v. D., L. & W. R. Co.* 229 U. S. 146, 33 Sup. Ct.
648; *Ellsworth v. Metheney,* 104 Fed. 119, 51 L. R. A. 389;
*Southern R. Co. v. Bentley,* 1 Ala. App. 359, 56 South. 249;
*Brown v. Shirley Hill C. Co.* 47 Ind. App. 354, 94 N. E.
574; *Pioneer M. & M. Co. v. Talley,* 152 Ala. 162, 43 South.
800, 12 L. R. A. N. s. 861; *Shadoan's Adm'r v. C., N. O. &
T. P. R. Co.* 26 Ky. L. Rep. 828, 82 S. W. 567; *Howard v.
Southern R. Co.* 132 N. C. 709, 44 S. E. 401; *Pittsburg &
C. R. Co. v. Sentmeyer,* 92 Pa. St. 276, 37 Am. Rep. 684;
*Kennedy v. Chase,* 119 Cal. 637, 52 Pac. 33; *Chicago & A. S.
& R. Co. v. Collins,* 43·Ill. App. 478; *Wright v. Rawson,* 52
Iowa, 329, 3 N. W. 106; *Severy v. Nickerson,* 120 Mass.
306; *Hills v. Blair* (Mich.) 148 N. W. 243; *Benson v. L. &
N. R. Co.* [1904] 1 K. B. 242.

For the respondent there was a brief by *John C. Kleczka*
and *Glicksman, Gold & Corrigan,* attorneys, and *W. P. Craw-
ford,* of counsel, and oral argument by *Mr. Crawford* and
*Mr. W. L. Gold.*

MARSHALL, J.    Appellant's complaint is of submission of
the case to the jury on the question of whether respondent, at
the time he was injured, was engaged in interstate commerce,
and within the scope of the federal Employers' Liability Act.

Whether a particular service or engagement therein is of
interstate commerce character, is a question of law.    The
facts being undisputed, jury interference is unnecessary, and,
if objected to, is improper, though not, necessarily, prejudi-
cially so.    Where the facts are so in dispute as to justify,
from one viewpoint, a finding in respect thereto on any vital
element one way, and from a different aspect in a different
way, the truth of the matter is for jury solution under proper
instructions, and the legal conclusion is for the court to deter-
mine, based thereon.    *North Carolina R. Co. v. Zachary,*
232 U. S. 248, 34 Sup. Ct. 305.

Commerce between a point in one state and a point in an-

other, is interstate commerce.   Those engaged in carrying on such commerce, either as principal or employee, are engaged in interstate commerce, and one while actually performing a service essential to or so closely connected with such business as to be substantially a part of it,—an act in the carrier service of the interstate work,—though not necessarily exclusive of all intrastate features, is in the performance of interstate service in the carrying on of interstate commerce, within the meaning of the federal Employers' Liability Act.   Such is its scope, as the federal supreme court has held in this language:

"Every common carrier railroad while engaged in commerce between the several states . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce." *Pedersen v. D., L. & W. R. Co.* 229 U. S. 146, 33 Sup. Ct. 648; *North Carolina R. Co. v. Zachary, supra; Ill. Cent. R. Co. v. Behrens,* 233 U. S. 473, 34 Sup. Ct. 646.

Thus it will be seen, that the test of whether the federal act applies to any particular situation is not whether the particular person directly causing the injury was, at the time thereof, engaged in interstate business, nor whether the act in which the person was engaged was, exclusively, an interstate commerce service; but whether the person or corporation charged with liability was engaged at the time it occurred in such commerce and the particular service in progress and environing or characterizing the employer's activity at the time of the injury, was of that nature,—its cast in that regard being efficient if the work was a substantial part of interstate commerce.   Where the particular work is entirely independent of interstate commerce service, the federal act does not apply, as in case of the switching movement of intrastate cars solely for intrastate purposes, *Ill. Cent. R. Co. v. Behrens, supra,*—an act the performance of which is a matter of indifference, so far as interstate commerce is concerned.   *Ped-*

*ersen v. D., L. & W. R. Co., supra.* But, as indicated, if the particular act, in any substantial part, is within the interstate field, then the federal law rules the situation, if either party sees fit to stand upon legal right in the matter. That may be done, or waived, expressly or impliedly. *Leora v. M., St. P. & S. S. M. R. Co.* 156 Wis. 386, 146 N. W. 520; *Hanson v. C., M. & St. P. R. Co.* 157 Wis. 455, 146 N. W. 524.

In the cases cited, the federal supreme court explained that the law does not permit of splitting up a service, which is in its nature an entirety, into its various steps or elements. Work in the repair of a bridge, as was said, which is used in intrastate as well as interstate business and is indispensable to both, and in moving material to the location of the bridge for the purpose of its repair, and in moving an engine from the roundhouse to be used in hauling an interstate train, and work partly intrastate and partly interstate as in preparing an engine to go out with a train made up of cars in interstate and in intrastate service, are all parts of an entirety having the efficient interstate commerce features required by the federal act. All work, so closely related to interstate commerce business as to be practically inseparable from it, though it promotes, at the same time, intrastate business, is in reality and legal effect a part of the former.

A further detail of the federal act, as it has been authoritatively construed, is important to this case. Any brief incidental absence from the scene of work or instrumentality used therein, which is not inconsistent with the employee's duty to his employer, does not, necessarily, preclude his efficiently claiming to be still on duty and engaged in interstate commerce. *North Carolina R. Co. v. Zachary,* 232 U. S. 248, 34 Sup. Ct. 305. Neither the period or nature or continuity of service, is changed by such a brief stepping aside from or cessation of activity as that of customarily visiting a wayside place for a lunch, or other legitimate and common means of refreshment, or waiting after one task shall have

been done for orders as to the next movement,—the employee all the time being within customary reach for continuance of the day's service and holding himself in readiness to immediately respond. *Missouri, K. & T. R. Co. v. U. S.* 231 U. S. 112, 34 Sup. Ct. 26; *U. S. v. C., M. & St. P. R. Co.* 197 Fed. 624; *U. S. v. D. & R. G. R. Co.* 197 Fed. 629.

Applying the foregoing to the undisputed facts detailed in this case, it is considered that, if the trial court committed any error in leaving the question of whether respondent was engaged in interstate business at the time he was injured, to the jury, it was not in his favor; but rather was in favor of appellant. Work in the transfer yard was indispensable to the interstate business. Respondent had not been relieved for the day. His service from the time he started out in the morning until the instant of his injury and the work he then thought might be required of him, were inseparably connected with interstate business and, so, were a part thereof. The court, under the circumstances, would not have made any mistake by so deciding, as matter of law.

Complaint is made because the trial court did not compel respondent to elect whether he would claim under the federal law or under the state law. It does not appear that either side claimed the benefit of the former, while the learned court seems to have thought that the federal act ousted the state court of jurisdiction to apply the state law, regardless of the attitude of parties in the matter. This court has held to the contrary in the two cases heretofore cited, and they seem to be in harmony with the federal decision. *North Carolina R. Co. v. Zachary, supra.*

If either side claims the benefit of the federal act, it is fatal error not to apply it, if, within reasonable probabilities, the result might otherwise be more favorable to the party complaining. Here there was no error in refusing to compel respondent to elect, as there would have been none by refusing to compel appellant to do so. The advantages of the federal

law were tendered by force of the law itself. It was up to the parties to accept or to stand indifferent. Both sides seem to have taken the latter course, throwing on the court the burden of submitting the cause as it might seem thereto the law required. Neither side made any objection to the federal law being applied. Respondent makes no complaint of the result. Appellant has no ground of complaint, and makes none, because of the law applied to the case, and could not, fairly, because opportunity was thereby afforded to reduce the damages actually sustained, on the ground of contributory negligence, if there were any. There was no proof of the law of Michigan, where the accident occurred, therefore the presumption is that it was the same as the law of this state which would have been more perilous to appellant than the federal law.

Enough has been said to indicate that, at the best for appellant, it was a jury question as to whether respondent ceased to be engaged in the service of appellant by leaving the right of way for a few moments with the intention of returning for further service, if necessary, before being relieved for the day. No reason is perceived which will justify disturbing the conclusion which the jury reached. Neither of the numerous cases cited to our attention, in principle, fits this one, while the federal cases are to the effect, as we have seen, that such incidents as the one in question do not, necessarily, break the continuity or nature of the service.

It is suggested that the federal act does not protect the injured person against the common-law defense of assumption of the risk, in such cases as this. Granted. The trial court so held. The case was submitted to the jury accordingly, resulting in a finding in respondent's favor. Assumption of the risk includes only such as the employee, expressly or impliedly, contracts to take upon himself because of being ordinary incidents of the particular business as ordinarily carried on, or as carried on in the particular case to his knowl-

edge or under such circumstances that reasonable attention to his situation would afford him such knowledge.   While, in a broad sense, it is a form of contributory negligence, actually, it is void of inadvertence and, technically, and essentially too, it is quite apart from contributory negligence in a closed sense of the term.   *Knauer v. Joseph Schlitz B. Co., ante,* p. 7, 149 N. W. 494. ·

Thus it will be seen that there was no assumption of the risk here as matter of law.   There was believable evidence, and much of it, that the movement of respondent which led to his injury, was a common one and that it was a safe one, subject to omission from the head end of the train or string of cars to give the customary signal by ringing the engine bell before starting.   The assumption of risk saved to employers under the federal act as a shield against the consequences of injuries to · employees, does not include risk of unexpected negligent acts of co-employees.

All the questions of fact in the case, material to appellant, seem to have been submitted to the jury, properly, and found upon believable evidence.   To some of the justices, including the writer, the most serious question of all that might have been presented, is whether the verdict is not excessive.   A motion was made for relief on that ground and the point saved for review; but it was not presented in the brief, nor was it on the oral argument.·   Under those circumstances, it is considered by the court that the judgment should not be disturbed, though it might under sec. 2405m, Stats., if necessary, to prevent a manifest failure of justice.   I should say, in passing, that it is by no means certain that the amount of the recovery would, in any event be disapproved, though it is my personal view that it is plainly excessive and I incline to the idea of curing, what to me seems an injustice, by exercising the broad and beneficent change in the practice which was wrought by the section referred to.

*By the Court.*—The judgment is affirmed.