Vaught v. East Tenn. & W. N. C. Ry. Co.

## WILL VAUGHT *v*. EAST TENNESSEE & W. N. C. RY. CO.

### (*Knoxville.*   September Term, 1923.)

COMMERCE.   Railroad employee loading intrastate freight shipment into interstate car held engaged in "interstate commerce."

Employee of railroad engaged in interstate commerce, injured while loading freight constituting an intrastate shipment into an interstate car, was engaged in interstate commerce at the time of the injury, precluding recovery of compensation under Workmen's Compensation Act, section 6, subdivision (a).

Cases cited and approved: Lehigh Valley R. Co. v. Barlow, 244 U. S., 183; Chicago, B. & Q. R. Co. v. Harrington, 241 U. S., 177; N. Y. C. R. Co. v. Porter, 249 U. S., 168; Graber v. Duluth, S. S. & A. R. Co., 159 Wis., 414; Callahan v. Boston & M. R. Co., 79 N. H., 173; Stavros v. C., M. & St. P. R. Co., 151 Minn., 251; Grybowski v. Erie R. Co., 88 N. J. Law, 1; Cincinnati, N. O. & T. P. R. Co. v. Clarke, 169 Ky,, 662.

Cases cited and distinguished: Shanks v. Del., L. & W. R. Co., 239 U. S., 556; Erie R. Co. v. Winfield, 244 U. S., 170; Southern P. Co. v. Industrial Acc. Com., 178 Cal., 20; Evans v. U. S. Railroad Administration, 191 App. Div., 704; Gruszewsky v. Director General, 96 Conn., 119.

FROM WASHINGTON.

Appeal from the Law Court of Johnson City.—HON. D. A. VINES, Judge.

GEO. N. BARNES, for Vaught.

EPPS & EPPS and W. O. LOWE, for Railway Co.

MR. JUSTICE HALL delivered the opinion of the Court.

The petitioner, Will Vaught, filed his petition in the law court at Johnson City, Tenn., against East Tennessee & Western North Carolina Railway Company, seeking compensation under the workmen's compensation statute (chapter 123, Acts of 1919) for an injury sustained by him in January, 1922, while in the employ of defendant, and which injury arose out of and in the course of his employment.

Defendant answered the petition, setting up the following defenses:

First. It was denied that petitioner's injury arose out of and in the course of his employment.

Second. That defendant was an interstate railroad operating between Johnson City, Tenn., and Cranberry, N. C., and at the time petitioner sustained his injury both defendant and petitioner were engaged in interstate commerce, and therefore the workmen's compensation statute was inapplicable to said injury.

Third. That no notice was given defendant of said accident and injury, as required by the provisions of the workmen's compensation statute.

Fourth. That prior to the filing of the petition in this cause petitioner instituted a common-law action for damages against defendant in the law court at Johnson City, Tenn., seeking to recover for his injury growing out of the same accident which suit was pending at the time of the filing of the petition in this cause, and said common-law action was pleaded and relied on by defendant as a complete bar to petitioner's claim in the present action.

Upon the trial in the court below before the circuit judge, without the intervention of a jury, it was held that petitioner was injured in the course of his employment, and that the injury arose out of said employment; that petitioner gave a good and sufficient excuse for his failure to give defendant notice of the injury within thirty days, as required by the workmen's compensation statute. However, the court was of the opinion that petitioner's employment was that of interstate commerce at the time he was injured, and for this reason alone he was not entitled to prosecute his petition, and the same was accordingly dismissed.

From this judgment both petitioner and defendant have appealed to this court; defendant appealing from so much of the judgment as held its other defenses were not sustained. The only question presented by the assignments of error of petitioner is: Was the trial court correct in holding that he was engaged in interstate commerce at the time of sustaining his injury?

It is conceded by counsel for petitioner that if he were so engaged then the workmen's compensation statute has no application to his injury, and that he would not be entitled to recover. Therefore we will first determine this question in the disposition of the case, and, if the judgment of the trial court is correct, it will be unnecessary to pass on defendant's assignments of error.

By section 6 of the compensation statute it is provided as follows:

. "That this act shall not apply to:

"(a) Any common carrier doing an interstate business while engaged in interstate commerce."

The proof showed that defendant operates a line of railroad between Johnson City, Tenn., and Cranberry, N. C , and that petitioner was employed by defendant at the time of his injury in the capacity of a truck handler at its freight station at Johnson City; that his duty was that of loading and unloading freight on and from cars coming into Johnson City, and going out therefrom. At the time petitioner was injured he was loading freight into an interstate car destined for a point in North Carolina, but into which also some intrastate shipments were being loaded; and at the moment of his injury petitioner was engaged in loading into said car an intrastate shipment, consisting of some oats in sacks, and while handling the truck upon which the oats had been placed it turned over and fell on or against petitioner and injured him. Petitioner insists that because he was actually engaged in loading into said interstate car, at the time of his injury, an intrastate shipment, his employment was intrastate rather than interstate, and therefore the workmen's compensation statute is applicable to his injury.

In *Shanks* v. *Delaware, L. & W. R. Co.*, 239 U. S., 556, 36 Sup. Ct., 188, 60 L. Ed., 436, L. R. A., 1916C, 797, it was held that the true test of employment in interstate commerce in the sense intended is:

"Was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?"

In that case it was held that where a railroad company was engaged in both interstate and intrastate transportation, conducting a machine shop for repairing locomotives used in such transportation an employee who was injured while taking down and putting up fixtures in such

machine shop, was not engaged in interstate commerce. And, in applying the test above quoted, the court said:

"It is plain that Shanks was not employed in interstate transportation, or in repairing or keeping in usable condition a roadbed, bridge, engine, car or other instrument then in use in such transportation. . . . The connection between the fixture and interstate transportation was remote at best, for the only function of the fixture was to communicate power to machinery used in repairing parts of engines some of which were used in such transportation."

It was held, in *Lehigh Valley R. Co.* v. *Barlow,* 244 U. S., 183, 37 Sup. Ct., 515, 61 L. Ed., 1070, that a switchman was not engaged in interstate commerce while moving from a siding to an unloading trestle three cars of coal which had, some three weeks before, been brought from another State.

In *Chicago, B. & Q. R. Co.* v. *Harrington,* 241 U. S., 177, 36 Sup. Ct., 517, 60 L. Ed., 941, it was held that an employee who was killed while engaged at defendant's Kansas City terminal yards, as a member of a switching crew in transporting coal from a storage track to a coal shed, whence it was to be supplied to locomotives of all classes, engaged in interstate traffic, that the federal Employer's Liability Act did not apply, and declared, quoting with approval from the Shanks Case:

"It is not important whether he had previously been engaged in interstate commerce, or that it was contemplated that he would be so engaged after his immediate duty had been performed. . . . Manifestly, there was no . . . close or direct relation to interstate transportation in the taking of the coal to the coal chutes."

In *Erie R. Co.* v. *Winfield,* 244 U. S., 170, 37 Sup. Ct., 556, 61 L. Ed., 1057, Ann. Cas., 1918B, 662, the facts were that the employee was in charge of the switching in the carrier's extensive yard at Croxton, N. J., and was switching freight cars about in the yard, especially to and from a transfer station. In some of the cars the freight was interstate, in others intrastate, and in still others it was of both classes. In concluding his work for that day the employee took his engine to the place where it was to remain for the night, and started to leave the yard. His route lay across some of the tracks, and, while passing over one, he was struck by an engine, and received injuries from which he soon died. The court, in determining whether said employee was, at the time he was killed, engaged in interstate or intrastate commerce, said:

"In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. . *. . Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work and partook of the character of that work as a whole. . . . His day's work was in both interstate and intrastate commerce, and so when he was leaving the yard at the time of the injury his employment was in both. That he was employed in interstate commerce is therefore plain, and that his employment also extended to intrastate commerce is for present purposes of no importance."

In *Southern P. Co.* v. *Industrial Acc. Commission,* 178 Cal., 20, 171 Pac., 1071, compensation was sought for the death of one Butler, caused by electrocution while Butler was working for petitioner as an electric lineman. The

opinion states that petitioner "operates a system of electric railway lines . . . its cars being used in both intrastate and interstate commerce," and continues:

"The opinion in the Shanks Case refers to a number of earlier cases in which, upon varying facts, the Federal statute had been held to be applicable or inapplicable. Upon examination of these decisions, it will be found that each case turned upon the peculiar facts of the employment in question. It may be said, however, that the decisive consideration is always the closeness or remoteness of the particular work, as related to interstate transportation."

*New York C. R. Co.* v. *Porter,* 249 U. S., 168, 39 Sup. Ct., 188, 63 L. Ed., 536, was a case where compensation had been awarded under the New York Workmen's Compensation act for the death of an employee who was killed by a passenger train while shoveling snow from certain tracks which "were used for the purpose of transporting . . . both interstate and intrastate commerce," and it was held that he was engaged in interstate commerce, and that therefore the State statute was not applicable.

In *Evans* v. *United States Railroad Administration,* 191 App. Div., 704, 182 N. Y. Supp., 310, it was said:

"It would introduce great confusion if it were held that whenever a brakeman on an interstate train laid hands upon an intrastate package, or whenever a conductor of such a train took up a ticket from an intrastate passenger, the interstate character of the employment would momentarily be lost, to be again resumed at a subsequent moment, so that duties would be constantly shifting back and forth between interstate and intrastate work. It

148 Tenn.—25

seems to me that the general duty of furthering interstate transportation continues to engage a trainman, even though the train stops in order that he may load on an intrastate package."

To the same effect is *Graber* v. *Duluth, S. S. & A. R. Co.,* 159 Wis., 414, where it was held that an employee, while actually performing a service essential to, or so closely connected with, interstate commerce as to be substantially a part of it, though not necessarily exclusive of all intrastate features, is in the performance of interstate service within the meaning of the federal Employer's Liability Act.

In *Callahan* v. *Boston & M. R. Co.,* 79 N. H., 173, 106 Atl., 37, it was held that if the act the servant was performing at the time of the accident was incident to interstate work, or if it was incident to a whole day's work, which was partly interstate and partly intrastate, he was within the federal Employer's Liability Act.

In *Stavros* v. *Chicago, Milwaukee & St. Paul Railroad Co. et al.,* 151 Minn., 251, 186 N. W., 942, 24 A. L. R., 630, it was held that an ash pit or a cinder pit, where are dumped the ashes and cinders from engines in both interstate and intrastate commerce, and which is a necessary facility in the operation of the railway, is also a facility or instrumentality used in interstate commerce, so that persons engaged in cleaning out or emptying such pit were held to be engaged in work in furtherance of such commerce.

To the same effect are the cases of *Grybowski* v. *Erie R. Co.,* 88 N. J. Law, 1, 95 Atl., 764; *Cincinnati, N. O. & T. P. R. Co.* v. *Clarke,* 169 Ky., 662, 185 S. W., 94.

In *Gruszewsky* v. *Director General,* 96 Conn., 119, 113 Atl., 160, it was held that an employee of a plant gener-

ating steam for passenger cars, while standing in the station, which cars carry both interstate and intrastate commerce, is engaged in interstate commerce. In that case the court said:

"When the structure or instrumentality or article is being directly and immediately used in interstate commerce it is held to be a part of it or so closely related to it as to be a part of it, and each one engaged in its service is at the time in such commerce."

We are of the opinion, after reviewing the foregoing cases, and others which might be cited in this opinion, that petitioner was, at the time of his injury, engaged in interstate commerce. It is true that at the moment of the accident, which resulted in his injury, he was loading into said interstate car an intrastate shipment, still this act was so directly and immediately connected with interstate commerce as to substantially form a part or a necessary incident thereof. In other words, we think petitioner's employment falls within the test announced in *Shanks* v. *Delaware, L. & W. R. Co.*, supra.

The trial judge was therefore correct in dismissing his petition, and the judgment is affirmed, with costs.