TENNESSEE CENT. RY. CO. *v.* PYLE.

(*Jackson,* April Term, 1941.)

Opinion filed December 7, 1941.

WALTER STOKES, of Nashville, and HOLLADAY & CLARK, of Cookeville, for plaintiff in error.

MAE R. STRICKLIN, of Wartburg, and J. W. STONE, of Harriman, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The petitioner in this compensation case is the widow of Pearson Pyle, who was killed by a train of the C. N. O. & T. P. Railway as it ran through the yards of Tennessee Central Railway at Emory Gap used jointly by these two Railroads, about 4 P. M., February 26th, 1938. Deceased was employed as yard foreman by the Tennessee Central Railway Company and was in the line of duty when killed. The defense of Tennessee Central Railway is that it is a "common carrier doing an interstate business" and that it was so engaged at the time when deceased was killed; that deceased was performing duties so closely related to interstate commerce as to be a practical part of such commerce; and the exemption expressly provided by Code, section 6856, subsection (a) of the compensation law, is invoked and relied on. That Section reads:

"This law shall not apply to whom.—This chapter shall not apply to:

"(a) Any common carrier doing an interstate business while engaged in interstate commerce."

The trial Court granted petitioner an award based on a monthly salary of $150. The amount is not controverted, if Tennessee Central Railway is liable under the Compensation Act.

There is practically no dispute about the controlling facts. The Tennessee Central operates over a line extending from its Emory Gap, Tennessee, yard, of which deceased was foreman, through Nashville to Hopkinsville in the State of Kentucky. It is, therefore, an interstate common carrier. This was a junction or connecting point with other lines at which cars were transferred therefrom to the Tennessee Central to be by it continued in transportation to destination.

Describing her husband's duties as foreman of this

Emory Gap yard, petitioner said, ''Well, he looked after the engines and kept the yard clear, called out the train crews, notified the crews when their train was called to go out,'' etc. She said he was not supposed to do the work himself, but ''he was overseer to see it was done.'' She said he informed the men when the engines were ready to go out, that it was a part of his duty to ''notify the crews when they were to go out.''

On this afternoon, freight train No. 81 was scheduled to start for Nashville, its destination, at about 5 P. M. Some of the crew of this train occupied a caboose which was standing on a side track in this yard. In discharge of his duty, as above shown, foreman Pyle started to this caboose. In crossing the intervening main line track of the C. N. O. & T. P. Railway, he was struck and killed by a fast through train of that line. His body was thrown some 150 feet beyond the station platform.

While the destination of this train, No. 81, was Nashville, an intrastate point, it appears that at least six of the freight cars composing it, about one-half of the whole number making up this train, were interstate shipments, en route from originating points in other States. One car of pulp and one of coal originated at Appalachian, Virginia; one of salt at Fort Huron, Michigan; one of merchandise at Spencer, North Carolina, and one at Saltville, Virginia. Now it was the crew of this train, whose duty it was to ''make up the train'' and to man it, that the deceased was in the act of notifying to begin this work when he was killed. It was while performing this part of the duties devolving upon him, the particular duty of summoning and giving orders to the crew of this train, made up of these carloads of freight in the process of transportation from points in various other States to Nashville, that this employee met his untimely death. Is

it possible to deny that his employer was at the time "a common carrier doing an interstate business," and "engaged in interstate commerce?" We think not. And, if the employer was so engaged at the time, in the very particular as to which this employee was serving, then both alike were engaged in interstate commerce. Certainly, the Railway Company was engaged in interstate commerce. It was an essential incident of transportation of these cars that they should be placed in this train after they had arrived from other States en route to Nashville. And this yard foreman was also so engaged when, acting for his Company, he was notifying and directing the train crew touching their duties. If the crew of men he was notifying or signaling to act were engaged in interstate commerce, of which there can be no doubt, then the foreman or boss was also so engaged.

In *Vaught* v. *East Tennessee & W. N. C. Ry. Co.*, 148 Tenn., 379, 255 S. W., 595, 596, 29 A. L. R. 1202, this Court approved as "the true test" this statement of the rule from the leading case of *Shanks* v. *Delaware, L. & W. R. Co.*, 239 U. S., 556, 36 S. Ct., 188, 60 L. Ed., 436, L. R. A. 1916C, 797: "Was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?"

In *Prince* v. *Nashville, Chattanooga & St. Louis Railway*, 152 Tenn., 189, 274 S. W. 13, the principle was applied that maintenance of a railroad right of way, used by both interstate and intrastate trains, is so much a part of interstate commerce as to exclude application of our Compensation Act. In that case the injured employee was working on the banks of the right of way. The holding would have been the same if he had been working on the tracks in this yard. And the holding

would have been the same if the employee had been a section foreman, instead of a section hand. And so we think this foreman, whose duty was to "oversee" the yard, see that it was in good and safe condition, was engaged in a branch of interstate commerce.

With special application to the duty this deceased was at the moment of his death performing, the opinion in *Erie Railroad Co.* v. *Collins*, 253 U. S., 77, 40 S. Ct., 450, 451, 64 L. Ed. 790, is suggestive. Holding that the employee, whose usual duty was operating a signal tower in the yards, was still engaged in interstate commerce when injured while starting up a gasoline pump for water in the railroad yards, the Court said: "It can hardly be contended that while plaintiff was engaged in the signal tower he was not engaged in interstate commerce, though he may have on occasion signaled the approach or departure of intrastate trains." Now we have here an employee whose duty was to "signal" the crew to man the trains; is not his connection with interstate transportation as close as if his duty were to signal the crew to move the trains? And, as indicated in the foregoing quotation, that sometimes the trains are interstate and sometimes intrastate is immaterial.

The opinion in *Vaught* v. *East Tennessee & W. N. C. Railway Co.*, *supra*, cites and quotes from *Erie R. Co.* v. *Winfield*, 244 U. S., 170, 37 S. Ct., 556, 61 L. Ed., 1057, Ann. Cas., 1918B, 662, in which the injured employee had charge of the switching in the yard (a duty somewhat like that of deceased in this case), and was killed as he crossed some tracks as he was leaving the yard after work. We quoted this language, which has application here:

"In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his

employment. . . . Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work and partook of the character of that work as a whole. . . . His day's work was in both interstate and intrastate commerce, and so when he was leaving the yard at the time of the injury his employment was in both. That he was employed in interstate commerce is therefore plain, and that his employment also extended to intrastate commerce is for present purposes of no importance.''

In *Williams* v. *Carolina, C. & O. Railroad Co.,* 154 Tenn., 224, 289 S. W., 520, 521, it was said: ''The meaning of the language quoted from section 6 is clearly that the liability and rights defined in the statute shall not arise from an injury to an employee when his employer doing an interstate business, is engaged in interstate commerce. To exclude the injury from the application of the statute, it is not sufficient that the employer be doing an interstate business as a common carrier, the statute expressly providing that the employer must also be 'engaged in interstate commerce.' This can only mean that the work in which the employer and employee are jointly engaged, as master and servant, at the time of the injury, [must] be an act of interstate commerce, or so closely related to interstate commerce as to be practically a part of it. Such, in effect, is the construction given to the statute by previous opinions of this court. [*Prince* v. *N., C. & St. L. Ry.,* 152 Tenn., 189, 274 S. W., 13]; *Vaught* v. *East Tennessee & W. N. C. Ry. Co.,* 148 Tenn., 379, 255 S. W., 595, 29 A. L. R., 1202; *Massengale* v. *Tennessee River Nav. Co.,* 146 Tenn., 248, 240 S. W., 785.''

We are unable to escape the conclusion that the making up and operation of this train, carrying interstate cars of freight, was connected with and a part of interstate

transportation; and that the supervision or overseeing of this yard by its foreman, including services required and being performed by him in signaling its crew to assume charge of it, was work so closely related to interstate commerce as to be a part of it. *Tennessee Railroad Co.* v. *Chitwood,* 163 Tenn., 303, 43 S. W. (2d), 204, is clearly distinguishable on its facts and does not control here. The judgment must be reversed and the suit dismissed.