LEORA, by guardian *ad litem*, Respondent, vs. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Appellant.

*February 4—March 17, 1914.*

*Railroads: Injury to employee: Interstate commerce: Waiver of objection that federal statute governs: Child labor law: Violation: "Track repairing:" Liability of employer: Contributory negligence not a defense: Appeal: Verdict upheld: Expert testimony: Hypothetical questions.*

1. In an action by a railway employee for personal injuries, the objection that the plaintiff was employed in interstate commerce and hence that the case is governed by the federal statute, if not raised before or during the trial, is waived and cannot be raised for the first time on appeal.

2. Where a boy under the age of eighteen, employed as member of a section crew, was injured while riding on a handcar to a point where he and the other members of the crew were to move a switch track so as to facilitate the loading of cars from an ore pile, he was in every substantial sense employed in "track repairing" within the meaning of secs. 1728*f*, 1728*h*, Stats. 1911, which prohibit and make a misdemeanor the employment of a child under eighteen years of age in such work.

3. The purpose of the statute being beneficent, it should be liberally construed to accomplish the end for which it was designed.

4. The violation of the statute, being made a misdemeanor, results in liability for consequent injuries to the infant employee, regardless of the question of contributory negligence.

5. The expert testimony being conflicting, and nearly evenly divided as to number of witnesses, upon the question whether plaintiff was rendered imbecile as the result of his injury, or was merely suffering from hysteria, the verdict of the jury in that regard will not be disturbed on appeal.

6. The evidence of a physician that he based his diagnosis of a fracture at the base of the brain, in the case of a patient who was unconscious, delirious, and suffering from severe injuries, lacerations, and contusions of the face, in part upon the history of the accident told him by some person, did not render his opinion incompetent on the ground that such history was not shown to have been truthful, especially where he was not asked to detail the history so given to him.

7. It being competent for the physician in such case to testify that in his judgment there was a fracture at the base of the brain, it was competent to include that fact in a hypothetical question addressed to other medical experts.

APPEAL from a judgment of the circuit court for Douglas county: FRANK A. ROSS, Circuit Judge.   *Affirmed.*

This is an action to recover damages for personal injuries suffered by the plaintiff, who was injured while employed by the defendant.   Many of the facts were undisputed.   The plaintiff, a youth seventeen years and seven months of age, was employed as a section hand on the defendant's railroad, at the station of Hoyt, about six miles west of Hurley, Iron county, Wisconsin, early in July, 1911.   He was injured on the 28th day of July, 1911, by jumping or falling from a handcar on which he was riding to work.   The section crew consisted of nine persons, viz. the foreman, four adults, and four boys between seventeen and eighteen years of age. About seven miles of track was taken care of by this crew, of which about half consisted of a spur track running east from Hoyt to the Montreal mine; the same being used for hauling iron ore from the mines to the main track and supplies from the main track to the mines.   On the morning in question the crew started on a handcar from the station of Hoyt and went east toward the Montreal mine, where they were to throw or move one of defendant's switch tracks used for the purpose of loading iron ore toward the stock pile, so that the ore on the stock pile could be more conveniently loaded on cars.

A train, consisting of an engine pushing three or four cars, had preceded the handcar from Hoyt to the mine, and the section foreman knew of the train ahead of them, but did not know at what time it left Hoyt or how far ahead of them the train was.

The nine members of the section crew had propelled the

handcar from the station of Hoyt up the grade where it passed over the Northwestern railroad track on a bridge, and then there was a descending grade for about 1,700 feet, then a level grade about 500 feet, then again ascending, something like 2,000 feet, to the mine. A few hundred feet from the foot of this last ascending grade there was a sidetrack leading to the barn, about 700 feet. The switch, to go from the main track on this sidetrack, was located at the west end of the sidetrack.

After the handcar had crossed over the Northwestern track, on the bridge, and had proceeded about half way down the grade, the foreman and the other men on the car discovered that the train was stalled on the barn track, about 500 feet east of the barn switch. The engine started back, and the foreman ordered Andrew Gutt, who was in charge of the brake, "Put on the brake."

Up to the time the car passed over the bridge over the Northwestern railroad three of the boys, including the plaintiff, stood on the forward part of the car with their backs to the front and were helping to pump the car. The Gutt boy was at the side of the car in charge of the foot brake, and the foreman and the four men were standing on the rear of the car facing the direction in which the car was moving. After starting down the grade the boys on the front part of the car turned around and faced forward. They then took hold of the tool handles, which are small pieces of iron fastened to each side of the central shaft or framework of the car, to which the pump handles are fastened, the handles themselves working up and down without assistance. When the order to apply the brake was given there was evidently some excitement among the three boys in front, who turned around and attempted to take hold of the pump handle again in order to help stop the car and avoid collision with the engine. In some way the plaintiff fell off the car (the defendant claims he jumped off in order to try and stop the car from

the ground) and was seriously and permanently injured. The car was stopped after running some sixty feet further.

A special verdict was returned by the jury, as follows:

"(1) Was the defendant, or any officer, agent, servant or employee thereof, other than the plaintiff, guilty of any want of ordinary care that directly contributed to plaintiff's injury in either of the following particulars:

"(a) As to furnishing to plaintiff a reasonably safe place in which to perform his work, while assisting in the operation of the handcar at the time of the accident? A. Yes.

"(b) In the management and operation of the handcar at the time of the accident? A. Yes.

"(2) Was the plaintiff guilty of any want of ordinary care that directly contributed to his injury? A. No.

"(3) If in answer to question 1 you find that the defendant, or any officer, agent, servant or employee thereof other than the plaintiff, was guilty of want of ordinary care that directly contributed to plaintiff's injury, and if in answer to question 2 you find that the plaintiff was guilty of want of ordinary care that directly contributed to his injury, then answer this: Was such want of ordinary care on plaintiff's part slighter or greater as a contributing cause to such injury than such want of ordinary care on the part of the defendant, or any officer, agent, servant or employee thereof other than plaintiff? A. ——.

"(4) What amount of money will reasonably compensate the plaintiff for his injuries? A. $9,000."

Judgment for the plaintiff having been rendered on this verdict, the defendant appeals.

For the appellant there were briefs by *W. A. Hayes* and *Luse, Powell & Luse,* and a supplemental brief by *Mr. Hayes,* and oral argument by *Mr. L. K. Luse* and *Mr. Hayes.*

For the respondent there was a brief by *W. P. Crawford,* attorney, and *John R. Heino,* of counsel, and a supplemental brief and oral argument by *Mr. Crawford.*

WINSLOW, C. J. At the threshold of this case we are met with the objection that the plaintiff was employed in inter-

state commerce when injured, and hence that the case is governed by the federal statute regulating actions for injuries suffered by employees of interstate carriers.

This objection was not made in the trial court, nor was it made in the briefs filed in this court upon the appeal, but was first raised upon the oral argument. The question is important and far reaching. It is not in the strict sense a jurisdictional question, because the court has power to try the case whichever law be applicable. If a defendant can carry its case through the trial court without raising the question of the application of the federal law, and, when defeated, come to this court and for the first time raise the question successfully, it possesses a very valuable advantage. It can experiment through both courts with one law, and, if defeated, commence over again under the other law, thus securing two trials, even though the first trial be without objection or exception. Such a conclusion should not be reached unless it is inevitable. Every instinct of fairness and justice cries out against it. It is a question also which seems likely to occur with more or less frequency so long as the two laws exist side by side with varying and contradictory provisions on essential matters. The line which divides employment in interstate commerce from employment in intrastate commerce is at times very shadowy and difficult to draw. If the question may lie dormant in the trial court and be raised for the first time in the court of last resort, it is very certain that many a case fairly tried under the terms of one law, and in which every right secured to the parties by that law has been carefully safeguarded, will have to be reversed and a new trial awarded because of an objection never brought to the attention of the trial court.

There is a well established legal principle which forbids this result, and that is the principle of consent or waiver. This principle has been frequently applied in cases where it is claimed in the appellate court for the first time that a law,

under which a recovery has been had in the trial court, is unconstitutional.

It is correctly said by Mr. Cooley in his work on Constitutional Limitations (7th ed.) at page 250, "where a constitutional provision is designed for the protection solely of the property rights of the citizen, it is competent for him to waive the protection and to consent to such action as would be invalid if taken against his will." There is really no room for debate as to the correctness of this principle; it is held by all courts so far as civil proceedings are concerned. See 8 Cyc. 791–795, and the authorities there collected in the notes.

This court has recognized and applied it in *Lewis v. American S. & L. Asso.* 98 Wis. 203 (73 N. W. 793), at page 227, where it is said that "a party may by his own act or conduct preclude himself from insisting upon constitutional objections to a statute affecting his rights."

It seems very clear that if a person may by conduct waive the objection that a statute is void for unconstitutionality, he may, *a fortiori,* waive the objection that the operation of a state statute has been suspended as to certain classes of cases by the enactment of a federal statute covering the same field. Consent or waiver may be evidenced in many ways, as reference to the cases will show, but one very effective way is by taking part without objection in judicial proceedings when good faith demands that the objection be made if it is to be made at all.

The principle is very well expressed in *Vose v. Cockcroft,* 44 N. Y. 415, at page 424, where it is said: "By failing to raise it [the question of the constitutionality of the act] or to present it in any form for the consideration of the court below, he waived it as effectually as he could have done by express stipulation." See, also, *Cowenhoven v. Ball,* 118 N. Y. 231, 23 N. E. 470, and *Dubuc v. Lazell, D. & Co.* 182 N. Y. 482, 75 N. E. 401.

The trial in the present case proceeded from start to finish on the basis that it was a case brought under and governed by the state law. It is true that the complaint alleges and the answer admits that the defendant's railway system extends into and through the states of Michigan, Wisconsin, and Minnesota, and that this fact is admitted in the answer, but this is a fact which is doubtless a matter of common knowledge and of which the court would probably take judicial notice. No suggestion was made during the trial, however, either that the road was an interstate road or that the plaintiff was engaged in interstate commerce when injured, nor was any claim made in any way that the federal law could have any application. In fact, the defendant at the close of the trial submitted several questions for the special verdict, one of which was almost in the exact terms of the third question prescribed by sec. 1816, Stats. 1911, which is the state law applicable to actions for injuries received by railway employees in the course of their duty.

We shall not attempt to lay down here any hard-and-fast rule as to the manner in which the question should be brought to the attention of the trial court. We should not deem any formal pleading necessary, but we should deem it essential that at some time before or during the trial, and at a time when the opposing party has proper opportunity to meet the question by evidence, the objection that the case falls under the federal liability act should be distinctly made, and thereafter insisted on. Otherwise we should consider the objection as waived.

In the present case nothing of this kind was done, and we regard the defendant as having consented to try the case under the terms of the state law. It becomes unnecessary, therefore, to consider whether the evidence showed a case to which the federal law was applicable, and we express no opinion on that question.

Leora v. Minneapolis, St. P. & S. S. M. R. Co. 156 Wis. 386.

Turning to the consideration of the errors claimed by the appellant, we find none that call for reversal of the judgment.

Our statute provides (secs. 1728$f$ and 1728$h$, Stats. 1911) that "No child under the age of eighteen years shall be employed . . . in switch tending, gate tending or track repairing," and that any corporation or firm violating the act shall be deemed guilty of a misdemeanor and on conviction be punished by fine or imprisonment in the county jail. The plaintiff was less than eighteen years of age at the time of the accident. He was employed in a section crew whose duties were to maintain and keep in repair the section of track assigned to them. At the time of the accident this crew were proceeding in the usual way on the conveyance furnished them to a point where they were to move or "throw" the ore-loading track several feet over nearer the pile of ore, so as to facilitate the operation of loading cars. In every substantial sense this was repair of the track. It would be a very narrow construction of the statute to hold that, in order to secure its protection, an infant must at the time of his injury be actually engaged in driving a spike or lifting a rail. The purpose of the statute was to efficiently protect children from the dangers attendant upon certain extremely hazardous occupations, dangers which children do not usually appreciate. To accomplish this end it has been thought wise to make it a criminal offense for any person to employ a youth under eighteen years of age about such work. This court's duty is to give the statute full efficiency rather than to rob it of effect by narrowing its construction. The crew enters upon its work when it embarks on the handcar for the scene of repair. In every true sense it is then engaged in track repairing, and it results from this conclusion that in the present case the statute was being violated at the time of the accident.

The violation of this statute results in liability for injuries to the infant resulting therefrom regardless of the ques-

tion of contributory negligence.   *Pinoza v. Northern C. Co.*
152 Wis. 473, 140 N. W. 84.

It follows from what has been said that there was really
no question to go to the jury in the present case except the
question of damages, and this depended, of course, upon the
question of the severity and permanency of the injuries re-
ceived by the plaintiff.   The plaintiff fell from the handcar
face downward between the rails, and his visible injuries con-
sisted almost entirely of contusions and lacerations about the
face and head.   When he was picked up he was unconscious
and bleeding from the mouth and nose, his wounds were
dressed by a physician at the mine (who was not called as a
witness), and he was then taken home and Dr. Urquhart was
called and made an examination of his condition.   The plaint-
iff was then unconscious and delirious.   On the afternoon of
the same day he was taken to the Twin City hospital at Iron-
wood, where he remained seventeen days and then returned
home.   He was not examined as a witness on the trial.   The
claim is, on the part of the plaintiff, that he has been and is
an imbecile and that his imbecility is the result of the acci-
dent.   On the other side the claim is that the plaintiff was
simply suffering from hysteria and would probably fully re-
cover under different surroundings.   Four physicians who
testified for the plaintiff and who examined the plaintiff
shortly before the trial testified that in their opinion he was
an imbecile, while five physicians who also examined the
plaintiff and who testified for the defendant were of opinion
that it was simply a bad case of hysteria.

If there was no substantial error committed in the recep-
tion of testimony upon this question, the verdict of the jury
cannot be disturbed.   It is vigorously claimed that there was
such error.   Dr. Urquhart, after testifying that he made a
fairly close examination of the plaintiff when called to treat
him on the day of the injury, was asked, "What did you find
as to the injuries he had received?" and replied, "He had a

laceration of his upper lip, a contusion of his nose and a few small superficial contusions of the skin of his face, and according to my diagnosis a fracture at the base of the brain." The latter part of this answer, concerning the supposed fracture at the base of the brain, was duly objected to, but the objection was overruled, and this ruling is assigned as error. On cross-examination he stated that plaintiff was unconscious at the time, that his diagnosis was formed upon what he saw of the injury, the history of the accident, and the symptoms which he had, and that he got the history of the accident from some one else. The objection is made that Dr. Urquhart should not have been allowed to state that in his opinion there was a fracture at the base of the brain because that diagnosis was based in part upon a history of the accident told him by some person, and that there is no proof that such history was truthful.

The objection seems to us unsubstantial. Here was a youth unconscious, delirious, suffering from severe injuries, lacerations and contusions of the face, showing beyond question that he had fallen or been thrown on his face with violence. No credible history of the accident could have been much more or much less than this. It is not claimed or suggested that the history given to the doctor was in any respect erroneous, and it would have been very easy to find out by a single question what the history was. Were it a case where the diagnosis must necessarily be founded on symptoms extending over a series of years or even months the objection would be more substantial. It would have been better (if appellant objected to the diagnosis because the doctor had not stated the history of the accident which was furnished to him) to have required the doctor to state the history, but in a simple case of traumatic injury of this nature which must have told its own story so clearly we cannot consider the omission as substantial error.

Objection is also made that in framing a hypothetical ques-

tion addressed to the plaintiff's medical experts, as to the cause of the plaintiff's present condition, the fact that in falling from the handcar the plaintiff sustained a fracture at the base of the brain was stated as one of the facts in the case upon which the opinions of the experts were to be in part founded. If, as we have held, it was competent for Dr. Urquhart to testify that in his judgment there was such a fracture, it was competent to insert the fact in the question addressed to the experts.

We find no further claims of error which require discussion.

*By the Court.*—Judgment affirmed.