SUNDQUIST, Respondent, vs. MADISON RAILWAYS COMPANY, Appellant.

*September 14—October 9, 1928.*

84

For the appellant there was a brief by *Schubring, Ryan, Clarke & Petersen* of Madison, and oral argument by *William Ryan.*

For the respondent there was a brief by *Hill, Thomann & Beckwith* of Madison, and oral argument by *D. V. W. Beckwith.*

STEVENS, J. (1) The jury found all the facts essential to a recovery by the plaintiff. There is no question as to the paralyzed condition of the plaintiff. The case turns wholly upon the question whether the facts sustain the finding of the jury that the paralysis of the plaintiff followed naturally and directly from the shock which she sustained when the automobile in which she was riding was struck by the defendant's car. Upon this question there is a conflict in the testimony of the doctors. The plaintiff offered the testimony of the doctor who examined her the day after the collision in Madison and also that of the physician who had treated her in Washington after she became paralyzed. Both doctors diagnosed the condition as hysterical paralysis. These doctors testified that plaintiff's paralysis was a condition that might follow such a nervous shock; that

paralysis could be caused by such a shock; that the shock at the time of the collision was a contributing factor; that it was very reasonable to expect such a condition, and that unquestionably the paralysis could be referred back to this shock. They further said that the fright experienced by the plaintiff in Washington would not cause paralysis in a normally healthy person.

The doctors called by the defendant company had never seen or treated the plaintiff. In general they came to the conclusion that the accident in Madison could not have caused the paralysis in Washington. But they did agree that the incident in Washington would not cause paralysis in a normally healthy person; that the collision with the street car in Madison might cause a serious nervous ailment, and that there might be some connection between the accident and the paralysis. Such proof presented an issue of fact for the jury and is sufficient to sustain the finding of the jury.

In order that his testimony may be admissible it is not necessary, often not possible, for a physician to state positively that disability followed directly from a given injury. A jury's finding of reasonable certainty may be based on testimony that such a result may "probably" follow or is "likely," "liable," or "apt" to follow the accidental injury. *Hallum v. Omro,* 122 Wis. 337, 342, 344, 345, 99 N. W. 1051; *Faber v. C. Reiss Coal Co.* 124 Wis. 554, 561, 102 N. W. 1049; *Block v. Milwaukee St. R. Co.* 89 Wis. 371, 375, 61 N. W. 1101.

(2) It is not essential to liability that there be proof of any bodily physical injury in case physical disability results naturally and directly from extreme fright or shock. *Pankopf v. Hinkley,* 141 Wis. 146, 148, 149, 123 N. W. 625. " 'It is sufficient if the damage claimed legitimately flows directly from the negligent act, whether such damage might have been foreseen by the wrongdoer or not.' " *Koehler v. Waukesha Milk Co.* 190 Wis. 52, 60, 208 N. W. 901.

(3) But it is urged that the testimony of the doctor who

treated the plaintiff in Washington was not admissible because the doctor testified that he made his diagnosis of hysterical paralysis by the exclusion of other possible causes for plaintiff's condition, and that in so doing he relied upon the report of the result of examinations made by hospital technicians, such as are regularly made in modern hospitals, as well as upon the history of the case and what he found upon his examination of the plaintiff. Those who made these tests were not called to show how the tests were made or that the results of these tests were correctly recorded in these reports. The reports of these technicians were not received in evidence. Their contents were not disclosed to the jury.

In order to say that a physician, who has actually used the result of those tests in a diagnosis and in the treatment of the plaintiff, may not testify what that diagnosis was, the court must deliberately shut its eyes to a source of information which is relied on by mankind generally in matters, that involve the health and may involve the life of their families and of themselves,—a source of information that it is essential the court should possess in order that it may do justice between these parties litigant.

In making a diagnosis for treatment physicians must of necessity consider many things that do not appear in sworn proof on the trial of a lawsuit,—things that mean much to the trained eye and touch of a skilled medical practitioner. This court has held that it will not close the doors of the courts to the light which is given by a diagnosis which all the rest of the world accepts and acts upon, even if the diagnosis is in part based upon facts which are not established by the sworn testimony in the case to be true. *Leora v. M., St. P. & S. S. M. R. Co.* 156 Wis. 386, 395, 146 N. W. 520.

The testimony of the attending physician was properly received.

*By the Court.*—Judgment affirmed.