**COURT OF APPEALS
DECISION
DATED AND FILED**

**September 13, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2023AP447**

STATE OF WISCONSIN

Cir. Ct. No. 2021ME11

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF Z.A.Y.:

WASHINGTON COUNTY HUMAN SERVICES DEPARTMENT,

PETITIONER-RESPONDENT,

V.

Z.A.Y.,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Washington County: RYAN J. HETZEL, Judge. *Reversed.*

¶1     LAZAR, J.[1] Zachary[2] appeals from orders for his extension of commitment under WIS. STAT. § 51.20(1)(am) and for the involuntary administration of medication under WIS. STAT. § 51.61(1)(g). Zachary asserts that contrary to *Langlade County v. D.J.W.*, 2020 WI 41, ¶59, 391 Wis. 2d 231, 942 N.W.2d 277, the trial court failed to make specific factual findings of dangerousness both to support a recommitment decision and with reference to a particular paragraph of § 51.20(1)(a)2. Thus, he contends, both orders must be reversed. This court agrees because the evidence did not support the findings that were made, and those findings were not only not specific with respect to dangerousness due to conduct or threats by Zachary, but they failed to establish that anyone was in reasonable fear for their safety. Both orders are reversed.

## BACKGROUND

¶2     Zachary's initial six-month WIS. STAT. ch. 51 commitment was entered on February 11, 2021. This order was extended in August 2021. On July 19, 2022, Washington County filed a petition for a second extension, which was accompanied by a report prepared by Dr. Erik Knudson, a psychiatrist who had examined Zachary previously. This most recent report was based on a record review because Zachary declined to meet with Knudson for an in-person evaluation.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] This court refers to the subject individual by a pseudonym to protect his confidentiality. *See* WIS. STAT. § 809.19(1)(g).

¶3      Knudson was the County's first witness at the hearing on the petition for Zachary's recommitment on August 2, 2022.  He opined that Zachary suffered from substantial disorders of thought and perception that "impair his judgment, behavior, capacity to recognize reality, and the ability to meet the ordinary demands of life."  He diagnosed Zachary as having both schizophrenia and post traumatic stress disorder.  Knudson further opined that Zachary was a proper subject for treatment, that he would be a proper subject for commitment if treatment were withdrawn, and that Zachary did not have sufficient understanding of the advantages, disadvantages, and alternatives to treatment and medication.  Related to Zachary's dangerousness, he testified that Zachary had made several threats toward people, including suggestions that he would like to punch or decapitate one of his case managers.  On cross-examination, Knudson acknowledged that his testimony about "reports of [Zachary] being in traffic" related to an event in 2011.  He also acknowledged that Zachary had not harmed or confronted or even approached the case manager he had expressed a desire to hurt.

¶4      The County also called Karly Reichardt, a case manager for Zachary.  She testified that she understood Zachary had been hospitalized due to "continuous threats to staff members, specific staff members at Washington County," as well as to clients and staff members at the shelter where he previously resided.  Zachary's attorney objected to this testimony on hearsay grounds, but the trial court overruled the objection because Reichardt was testifying about "what her understanding was rather than what was said."  Reichardt did not testify as to the substance of the threats she had heard about or any additional details about

them.[3] She stated that Zachary had not made any specific threats of harm against himself in her presence. Nor had he made any threats to Reichardt.

¶5    Finally, Zachary testified. He testified that in the past year he had not threatened to harm himself but he "made threats towards others out of anger," although he "never act[ed] on them." He further testified that he copes with his anger by expressing himself "in an artist[ic] form" through music, drawing, painting, and reading.

¶6    The trial court granted the County's request for an extension of Zachary's commitment and entered an involuntary medication order. The court concluded, based on Knudson's testimony, that there was "a substantial probability of physical harm to other individuals and a substantial probability of physical impairment or injury to [Zachary] or other individuals." It then acknowledged the dearth of evidence of the probability of self-harm, but stated that Zachary "does pose a risk to others … by his own admission and Dr. Knudson's testimony." Zachary's counsel asked the court to articulate, pursuant to **D.J.W.**, "the specific factual findings regarding dangerousness and the specific facts the Court is relying upon to support his legal conclusion to find … a substantial probability of physical harm to other individuals." In response, the court explained:

> Obviously I have the history here. I know the history is not recent. But we have a history of violence and violent activity, which was testified to by the doctor in this case. That included [Zachary] standing in traffic with a sword. The doctor did testify and the Court relies on the doctor's testimony that he believes to a reasonable degree of

---

[3] Reichardt only mentioned discussing with Zachary "the inappropriateness of the comments."

> medical certainty that [Zachary] does in fact present a danger to others.

> But in front of this Court today is the fact that [Zachary] is in confinement due to alleged threats. And while the testimony on those alleged threats was weak, [Zachary] himself did admit to making those threats. And the Court will consider his testimony and the fact that he admits that threatening others as a reason why he is currently confined. And that supports the doctor's conclusion that he is dangerous. And I make that specific finding.

¶7     Zachary appeals the orders extending his commitment and authorizing involuntary medication, which were entered on August 3, 2022.

## DISCUSSION

¶8     It has been said that the true measure of any society can be found in how it treats its most vulnerable members. This is never more true than in the context of civil commitments. These cases may uniquely deprive citizens of their personal liberty (with supervised commitment in the community or an inpatient stay in a mental health facility) and may also restrict their rights by curtailing their ability to select or refuse certain medications and treatment. Both aspects are significant restrictions of personal liberty and must be able to withstand constitutional scrutiny. "It is clear that 'commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" *Jones v. United States*, 463 U.S. 354, 361 (1983) (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *State v. Post*, 197 Wis. 2d 279, 302, 541 N.W.2d 115 (1995). "A finding of 'mental illness' alone cannot justify a State's locking a person up against his will and keeping him indefinitely in simple custodial confinement." *O'Connor v. Donaldson*, 422 U.S. 563, 575

(1975). Simply put, there is "no constitutional basis for confining such persons involuntarily if they are dangerous to no one and can live safely in freedom." ***Id.***

¶9      Accordingly, to issue a civil commitment order, trial courts must find by clear and convincing evidence that petitioners establish that subject individuals are mentally ill, proper subjects for treatment, and dangerous to themselves or others under at least one of the five statutory standards. ***D.J.W.***, 391 Wis. 2d 231, ¶29; WIS. STAT. § 51.20(1)(a)1.-2., (13)(e). This is especially critical when "[i]t may be true that an erroneous commitment is sometimes as undesirable as an erroneous conviction." ***Addington***, 441 U.S. at 428. So, courts are to take special care in this area of law.

¶10      The review of a civil commitment order—determining whether the petitioner has met the burden of proof—presents a mixed question of law and fact. ***Waukesha County v. J.W.J.***, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783. A trial court's findings of fact are upheld unless they are clearly erroneous, ***id.***, and appellate courts will "accept reasonable inferences from the facts." ***Winnebago County v. Christopher S.***, 2016 WI 1, ¶50, 366 Wis. 2d 1, 878 N.W.2d 109 (citation omitted). Whether those facts satisfy the statutory standards, however, is a question of law that is reviewed de novo. ***Marathon County v. D.K.***, 2020 WI 8, ¶18, 390 Wis. 2d 50, 937 N.W.2d 901.

## I.      Mootness of the appeal

¶11      While this court acknowledges that our supreme court has determined that mental commitment appeals are not moot based upon two (or possibly three) collateral consequences, *see* ***Sauk County v. S.A.M.***, 2022 WI 46, 402 Wis. 2d 379, 975 N.W.2d 162, this court notes that in many cases such consequences are illusory. For instance, the first consequence articulated in

*S.A.M.* is that the subject individual is subject to a firearm prohibition. *Id.*, ¶23. But, as noted in the concurrence/dissent to *S.A.M.*, that ban could be duplicative in some cases, effectively rendering *it* moot. *Id.*, ¶¶41-43 (Ziegler, C.J., concurring in part and dissenting in part). The individual in *S.A.M.*, like Zachary, was already subject to a prior firearm ban from an initial commitment that had not been appealed, but the supreme court reasoned that an additional ban could have a practical effect (albeit "marginal") if and when a future court considered restoration of gun rights. *Id.*, ¶23. Here, there was also a firearm ban in the first recommitment order. Thus, the first collateral consequence may not be applicable in this appeal.

¶12 The second collateral consequence mentioned in *S.A.M.* is that a county may seek to recoup payments from the subject individual that it made to supply recovery care and medication. *Id.*, ¶24; *see also* WIS. STAT. § 46.10(2). In this case, as in many (if not most), the County has made no indication that it would seek such reimbursement. Nor has Zachary's counsel indicated that a financial reimbursement demand was actually made by the County. Zachary's latest recommitment expired on August 3, 2023. Regardless of the potential lack of a viable, non-moot appeal, this court will address the merits.

## II. Specific factual findings were not made by the trial court.

¶13 The key to this appeal is an analysis of whether, even after being expressly asked, the trial court made "specific factual findings with reference to the subdivision paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based." *See D.J.W.*, 391 Wis. 2d 231, ¶40. The *D.J.W.* court set out the rationale underlying this requirement. "First, it provides clarity and extra protection to patients regarding the underlying basis for a recommitment." *Id.*,

¶42. Civil commitments are significant curtailments of an individual's personal liberty and they can carry with them an additional deprivation of personal autonomy when accompanied with an involuntary medication and treatment order.

¶14 Second, as the **D.J.W.** court elaborated:

> a requirement of specific factual findings ... will clarify issues raised on appeal of recommitment orders and ensure the soundness of judicial decision making, specifically with regard to challenges based on the sufficiency of the evidence. *See* **Klinger v. Oneida** [**County**], 149 Wis. 2d 838, 846-47, 440 N.W.2d 348 (1989) ("[A]s this court has stated many times, the [trial] court must make a record of its reasoning to ensure the soundness of its own decision making and to facilitate judicial review."). A more substantial record will better equip appellate courts to do their job, further ensuring meaningful appellate review of the evidence presented in recommitment proceedings.

**D.J.W.**, 391 Wis. 2d 231, ¶44 (first alteration in original).

¶15 To start, the evidence presented by the County as to Zachary's dangerousness was thin.[4] Testifying expert physicians are expressly permitted to

---

[4] There are clear, easy steps that could have been taken to bolster the record. First, the report of the examining physician who testifies should *always* be moved into evidence; it provides a further basis for an appellate court to discern facts and inferences in support of the trial court's rulings. A trial court's findings of fact are upheld unless they are clearly erroneous, **Waukesha County v. J.W.J.**, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783, and an appellate court will "accept reasonable inferences from the facts." **Winnebago County v. Christopher S.**, 2016 WI 1, ¶50, 366 Wis. 2d 1, 878 N.W.2d 109 (citation omitted). An appellate court may search the record for evidence to support the trial court's findings of fact. **Becker v. Zoschke**, 76 Wis. 2d 336, 347, 251 N.W.2d 431 (1977).

Next, the County could have called witnesses (who could easily have appeared remotely by videoconference) to testify as to the threats they actually heard and why those threats were not merely inappropriate, but were emblematic of dangerousness that would have supported the trial court's ruling; even Reichardt could have more fully explained what she heard from Zachary. This court recognizes that civil commitment cases proceed at an extraordinarily fast pace, but the potential infringement on liberty—as well as protection of the community—necessitates that all relevant and admissible evidence is presented and admitted into the record.

rely upon the review of an individual's treatment records, WIS. STAT. § 51.20(1)(am), and may use that review as a basis to formulate their opinions as to the three key issues. *See* § 51.20(9)(a)5; **Walworth County v. Therese B.**, 2003 WI App 223, ¶8, 267 Wis. 2d 310, 671 N.W.2d 377 ("It is well settled that it is 'proper for a physician to make a diagnosis based in part upon medical evidence of which he has no personal knowledge but which he gleaned from the reports of others.'") (quoting **Karl v. Employers Ins. of Wausau**, 78 Wis. 2d 284, 299, 254 N.W.2d 255 (1977)). However, "[w]hile experts may rely on inadmissible evidence in forming opinions … the underlying evidence is still inadmissible." **S.Y. v. Eau Claire County**, 156 Wis. 2d 317, 327, 457 N.W.2d 326 (Ct. App. 1990).

¶16    That is precisely the issue with Knudson's testimony. He was able to rely upon a record review—especially in light of Zachary's refusal to attend the pre-hearing examination—to make diagnoses and determinations as to the three underlying questions in a mental recommitment case, but the County may not rely upon that inadmissible evidence to support a finding of the subject individual's dangerousness. While acknowledging that the "history is not recent," the trial court began by mentioning "a history of violence and violent activity, which was testified to by [Knudson]." The court also relied upon the dated incident (from 2011) where Zachary allegedly stood in traffic with a sword as one of its specific factual findings showing dangerousness. Both of these "findings" were solely from Knudson's record review and, more concerning, were from a report that was never placed into evidence. "[I]n a recommitment hearing, ... an examiner's report must be received into evidence to be considered by the [trial] court." **Outagamie County v. L.X.D.-O.**, 2023 WI App 17, ¶36, 407 Wis. 2d 441, 991 N.W.2d 518.

9

¶17    Moreover, Zachary's case manager was erroneously allowed to make statements as to why he had been hospitalized: Riechardt's testimony about threats to staff in Washington County as well as threats made at Zachary's shelter were, without doubt, hearsay. *See* WIS. STAT. § 908.01(3) (Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Even after Zachary's counsel's objection, the trial court not only allowed the statements into evidence, but then relied upon them in its oral ruling as a specific factual finding: "But in front of this Court today is the fact that [Zachary] is in confinement due to alleged threats." As with the statements from Knudson, these statements from Reichardt[5] are not specific as to a statutory category of dangerousness (or admissible).

¶18    Finally, the trial court—again while noting that "the testimony on those alleged threats was weak"—made one more factual finding:

> [Zachary] himself did admit to making those threats. And the Court will consider his testimony and the fact that he admits that threatening others as a reason why he is currently confined. And that supports the doctor's conclusion that he is dangerous. And I make that specific finding.

¶19    It is not entirely correct that Zachary admitted to making threats to staff in Washington County or at his shelter home that led to his confinement. He admitted to making verbal threats to unknown individuals as follows:

---

[5] The record appears to show that Reichardt and Zachary discussed these "inappropriate comments" but Reichardt never testified as to what Zachary admitted to saying or why his statements were evidence of dangerousness. Statements made by a party—or, in this case, the subject individual—are not hearsay and are admissible. *See* WIS. STAT. § 908.01(4)(b)1.; ***State ex rel. Kalt v. Board of Fire and Police Comm'rs for Milwaukee***, 145 Wis. 2d 504, 516, 427 N.W.2d 408 (Ct. App. 1988).

Q.    [Zachary], in the past year have you made any threats to harm yourself?

A.    No. I made threats towards others out of anger. But I never act on them. I could say—

Q.    So in the past year—is it your testimony that in the past year you have not acted on any threats that you have made towards anyone else?

A.    Yes. I'm not that kind of person. I just say the things out of anger.

Q.    And finally, [Zachary], do you have ways of coping with your anger when you feel it?

A.    Yes, I do.

Q.    How do you cope with your anger?

A.    I listen to music, I draw, I paint, I read books. But mostly I express myself in an artist form a way. So—

Q.    Do you believe that talking about your anger helps you?

A.    Yes. That's why I see therapists.

¶20    This was not an admission. But even if this court concluded it is not clearly erroneous to find the same, standing alone, this is not sufficient as a matter of law to form a specific, factual basis upon which to deprive Zachary of his personal liberty on the grounds that he is statutorily dangerous. None of the counsel, nor the court, asked Zachary to elaborate on the type of threats he made. Moreover, there is no testimony on the record whatsoever that anyone was in "reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent ... threat to do serious physical harm." *See* WIS. STAT. § 51.20(1)(a)2.b. That trial court's final, factual finding, when it was asked to

elaborate as to "specific facts [it was] relying upon to support [its] legal conclusion" was not sufficient.[6]

¶21    The trial court's failure to make sufficient specific factual findings underlying its dangerousness finding constitutes a fatal error that requires reversal due to the passage of time since the petition was filed.  *See **D.J.W.***, 391 Wis. 2d 231, ¶¶59-60.  Pursuant to WIS. STAT. § 51.20(7)(c), and in order to facilitate prompt resolutions in civil commitments, there are strict, quick deadlines for a final hearing or jury trial on a petition for involuntary commitment.  *See **State ex rel. Lockman v. Gerhardstein***, 107 Wis. 2d 325, 328-29, 320 N.W.2d 27 (Ct. App. 1982).  Those deadlines have long since passed and, due to its failure to comply with ***D.J.W.*** with respect to dangerousness specificity, the trial court now lacks competency to conduct another evidentiary hearing in this matter.  "Unlike a [trial] court's subject matter jurisdiction, which is established by the Wisconsin Constitution, competency may be affected by noncompliance with statutory requirements pertaining to the invocation of that jurisdiction in individual cases." ***Sheboygan County v. M.W.***, 2022 WI 40, ¶35, 402 Wis. 2d 1, 974 N.W.2d 733 (footnote omitted).  Therefore, remand is not a possibility and "outright reversal is the appropriate remedy." ***Id.***, ¶34.  Because the commitment order is reversed, the order for involuntary administration of medication must also be reversed since it can only exist if there is a valid commitment.  *See* WIS. STAT. § 51.61(1)(g)3.

---

[6] Based upon this court's conclusion that the trial court did not make specific factual findings supporting dangerousness, it declines to address Zachary's argument that the trial court also did not specifically reference the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2., as required by ***Langlade County v. D.J.W.***, 2020 WI 41, ¶40, 391 Wis. 2d 231, 942 N.W.2d 277. *See **Sweet v. Berge***, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (when one issue is dispositive of an appeal, we need not discuss other issues).

**CONCLUSION**

¶22 Civil commitments are massive curtailments of liberty, and citizens have the inherent right to be free from unjustified commitments. The trial court in this case failed to make specific factual findings to support a recommitment decision. The time for another evidentiary hearing has long since passed and the trial court now lacks competency to conduct further proceedings or to clarify the record. Accordingly, this court must reverse the trial court's order committing Zachary. Because that commitment order is reversed, the corresponding order for involuntary administration of medication and treatment is also reversed.

*By the Court.*—Orders reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.